IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICOLE AUSTIN-HALL, as
Administrator of the Estate of
Alexandria Austin,

          Plaintiff,

     v.

ARIEL S. WOODARD, *et al.*,

          Defendants.

:

:

:

:

Case No. 3:18-cv-270

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING *NUNC PRO TUNC*
PLAINTIFF'S MOTION FOR LEAVE TO FILE EXCESS PAGES (DOC.
#82); SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT WILBERFORCE UNIVERSITY'S MOTION TO STRIKE
AFFIDAVITS (DOC. #86); SUSTAINING DEFENDANT WILBERFORCE
UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT (DOC. #81);
VACATING NOVEMBER 2, 2020, TRIAL DATE; CONFERENCE CALL
SET FOR OCTOBER 21, 2020

---

Plaintiff, Nicole Austin-Hall, as administrator of the estate of her daughter,

Alexandria Austin, filed suit against Ariel Woodard, Alana Wedderburn, Shala

Sylvester, and Wilberforce University. She asserts claims of negligence resulting in

wrongful death, survivorship, and willful, wanton and reckless misconduct against

all Defendants. She also asserts claims of negligent misrepresentation, intentional

misrepresentation and promissory estoppel against Wilberforce University. This

Court's jurisdiction is based on diversity of citizenship.

This matter is currently before the Court on three pending motions: (1) Defendant Wilberforce University's Motion for Summary Judgment, Doc. #81; (2) Plaintiff's unopposed Motion for Leave to File Excess Pages, Doc. #82; and (3) Defendant Wilberforce University's Motion to Strike Affidavits, Doc. #86.

## I.     Background and Procedural History

Wilberforce University, located in Xenia, Ohio, has an Alcohol and Drug Policy that strictly prohibits the possession of alcohol and illicit drugs on campus. Students are subject to suspension or expulsion for violating this policy.  Doc. #81-1, PageID#1060.  Nevertheless, not surprisingly, the students sometimes break the rules.  In this case, the consequences were tragic.

In the Fall of 2017, Alexandria Austin, Ariel Woodard and Alana Wedderburn were students at Wilberforce University.  Shala Sylvester was a student at nearby Central State University.  On the evening of September 25, 2017, the four women attended a birthday party in one of the dorm rooms on the Wilberforce campus.  In violation of the university's Alcohol and Drug Policy, they consumed alcohol at that party.

Sometime after midnight, Shala Sylvester asked Alana Wedderburn to give her a ride back to Central State University.  Alexandria Austin and Ariel Woodard asked if they could go along.  Before they got in the car, Wedderburn, who was feeling "extremely tired" and a "little tipsy," asked Woodard to drive.  Doc. #76, PageID#818.  Woodard agreed.  Austin climbed in the front passenger seat.

2

Sylvester was behind Woodard in the back seat, and Wedderburn was behind Austin.

Wedderburn testified that they initially turned right out of the campus parking lot to go to a nearby gas station.  However, when Sylvester indicated that she wanted to be dropped off at Central State University first, Woodard did a U-turn and headed back the other way.  *Id.* at PageID##819-20.  According to Sylvester, Woodard was driving very fast.  "I just remember her flying."  Doc. #75, PageID#782.

An Ohio State Highway Patrol Traffic Crash Report indicates that, at approximately 2:33 a.m., on September 26, 2017, as Woodard attempted to negotiate a curve on North Bickett Road, the car left the pavement and struck a gas line post and then a tree.  The car's airbags were deployed.  The airbag control module indicates that the vehicle was traveling 89 mph before it left the road.  At the time the car left the pavement, it was traveling 77 mph.  At the time it struck the tree, it was still traveling 55 mph.  Doc. #81-2, PageID##1162-94.

Alexandria Austin, Plaintiff's 21-year-old daughter, was declared dead at the scene.  *Id.* at PageID#1195.  The coroner's report indicates that she had alcohol and marijuana in her system at the time of the accident.  *Id.* at PageID#1197.  The three other women suffered very serious injuries.  Woodard's blood alcohol level exceeded the legal limit at the time of the crash.  Doc. #83, PageID#1208.  She later pled no contest to charges of aggravated vehicular homicide, aggravated

vehicular assault, and operating a vehicle under the influence of alcohol.  She was sentenced to four years in prison.  Doc. #77-1, PageID##854-56.

Plaintiff, Nicole Austin-Hall, as administratrix of her daughter's estate, filed suit against Woodard, Wedderburn, Sylvester and Wilberforce University. Counsel has represented to the Court that tentative settlements have been reached with all Defendants except Wilberforce University.  Wilberforce University has now moved for summary judgment on all claims asserted against it.  Doc. #81.


## II.    Wilberforce University's Motion to Strike Affidavits (Doc. #86)

The Court turns first to Wilberforce University's Motion to Strike the Affidavits of Nicole Austin-Hall and Alazia Mixon, Doc. #86, submitted by Plaintiff in support of her memorandum in opposition to the motion for summary judgment.

Wilberforce University argues that these two affidavits violate the "sham affidavit" rule and must be stricken.  Under the "sham affidavit" rule, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  The Sixth Circuit has held that:

> If the affidavit directly contradicts prior sworn testimony, it should be stricken "unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Aerel*, 448 F.3d at 908. If the affidavit does not directly contradict prior sworn testimony, it should be stricken if it is "an attempt to create a sham fact issue." *Id.* at 908–09 (citation omitted).

4

*France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (citing *Aerel, SRL v. PCC Airfoils, LLC*, 448 F.3d 899, 908-09 (6th Cir. 2006)). Nevertheless, the "sham affidavit" rule does not prevent a party "who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit." *Aerel*, 448 F.3d at 907.

### A. Nicole Austin-Hall

Wilberforce University moves to strike paragraph 15 of Nicole Austin-Hall's affidavit, in which she states that she "had substantial influence over which college [Alexandria] attended." Doc. #84, PageID#1247. The university argues that this directly conflicts with Plaintiff's deposition, in which she testified that she did not help Alexandria with the application process, and that, despite applying to several other universities, Alexandria was accepted only at Wilberforce. Doc. #69, PageID#521.

The Court finds no direct contradiction.[1] The fact that Plaintiff did not help Alexandria complete her college application does not necessarily mean that she did not have substantial influence over which college she attended. Plaintiff's affidavit makes it clear that Alexandria could not have attended Wilberforce without her approval and financial support. Doc. #84, PageID##1248-49. She was not asked about this at her deposition. Moreover, although Wilberforce was the only

---

[1] Wilberforce University does not argue that this statement was submitted in an attempt to create a sham issue of fact that would preclude summary judgment on any of Plaintiff's claims.

university that accepted Alexandria's application, this does not necessarily mean that there were no other viable options; Alexandria could have applied to additional colleges. Accordingly, the Court OVERRULES the motion to strike paragraph 15.

Paragraphs 21-26 of Plaintiff's affidavit explain that at orientation, a black male Wilberforce employee told her, first in the group orientation and again in a private conversation, that the Alcohol and Drug Policy was strictly enforced. He allegedly also assured her that Alexandria would be "safe" attending Wilberforce.[2] Plaintiff avers that his statements were a "substantial factor in Alexandria attending and remaining at Wilberforce," and that she "relied on those statements in allowing and enabling Alexandria to attend Wilberforce." *Id.* at PageID#1248.

Wilberforce argues that, because Austin-Hall admitted at her deposition that she did not visit Wilberforce University until the day that Alexandria moved in, Doc. #69, PageID#521, any statements made by this employee concerning the university's strict enforcement of the Alcohol and Drug Policy could not have been a contributing factor in the decision to allow Alexandria to attend Wilberforce.

Again, the Court finds no direct contradiction and no evidence that this statement was submitted to create a sham factual dispute. Even if Plaintiff logically could not have relied on the employee's statements in allowing Alexandria to *enroll* at Wilberforce, she could have relied on them in allowing Alexandria to *remain* there, with her continued financial support, following orientation.

---

[2] Such statements are not offered for the truth of the matter asserted, but rather to show their effect on Plaintiff. Therefore, they are not hearsay.

Accordingly, the Court also OVERRULES the motion to strike this portion of Plaintiff's affidavit.

### B. Alazia Mixon

Wilberforce next moves to strike paragraphs 5, 6 and 7 of Alazia Mixon's affidavit. Those read as follows:

> 5. While I attended Wilberforce, university officials did not enforce the policy of no drinking and no drugs in the university dormitories. Alcohol and marijuana were often present in the dormitories.
> 6. It was common for people, including those who were underage, to gather in the parking lot in front of Henderson and play music, drink, and smoke marijuana. These activities were going on in a place where police, and university officials, were able to observe, but they did not intervene.
> 7. On the night Alexandria Austin was killed, I saw people gathered outside in the parking lot in front of Henderson dormitory playing music and drinking alcohol, similar to what I had seen in the past.

Doc. #84, PageID##1252-53.

Wilberforce argues that these paragraphs are directly contradicted by Mixon's deposition testimony. *See, e.g.* Doc. #74, PageID##687-88, 698-701, 709-10, 719-22, 727-29, 747-48.

Plaintiff points out, however, that, because Mixon's deposition was taken on February 11, 2020, 5 months *after* she executed her September 11, 2019, affidavit, the sham affidavit rule does not apply. *See Webb v. United States*, 789 F.3d 647, 660-61 (6th Cir. 2015) (holding that the doctrine is inapplicable where the statements sought to be discredited do not contradict earlier statements).

Wilberforce argues that, even if the Court finds that the "sham affidavit" rule does not apply because the affidavit was executed prior to the deposition, the Court should still strike the affidavit as a discovery sanction under Fed. R. Civ. P. 37(c)(1), given that the affidavit was never disclosed during discovery and Plaintiff is now attempting to use it to support her claims. Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[3] Wilberforce argues that Plaintiff's failure to produce the affidavit during discovery was neither "substantially justified" nor "harmless." Had it known of Mixon's affidavit, Wilberforce would have cross-examined her on its contents during her deposition. Plaintiff has not sought leave to file a surreply to address this argument.

Although the "sham affidavit" rule does not bar consideration of Mixon's affidavit, Fed. R. Civ. P. 37(c)(1) does. Plaintiff was required to disclose the substance of Mixon's affidavit and failed to do so. The Court therefore SUSTAINS Wilberforce's motion to strike Mixon's affidavit as a discovery sanction. It will not be considered in ruling on the motion for summary judgment.

---

[3] Fed. R. Civ. P. 26(a)(1)(A)(i) requires a party to make initial disclosure of the name of each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(e)(1) requires a party to supplement such initial disclosures if additional information becomes known.

III.   **Wilberforce University's Motion for Summary Judgment (Doc. #81)**

The Court turns now to Wilberforce University's motion for summary judgment, Doc. #81.  As an initial matter, the Court SUSTAINS *nunc pro tunc* Plaintiff's unopposed Motion for Leave to File Excess Pages, Doc. #82, in her memorandum in opposition to the motion for summary judgment.

A.   **Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

10

1091 (1990).  If it so chooses, however, the court may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).

### B. Analysis

As previously noted, Wilberforce University has a policy that strictly prohibits "the possession, use, and/or distribution of paraphernalia or alcohol and drugs on University property."  Doc. #81-1, PageID#1060.  Plaintiff Nicole Austin-Hall describes herself as "a devout Christian, who does not believe in drinking alcohol or doing illicit drugs."  Doc. #84, PageID#1246.  She wanted her daughter, Alexandria, to attend a college that prohibited the use of such substances.  She maintains that Wilberforce's strict drug and alcohol policy, as set forth in the Student Handbook, was a substantial factor in allowing Alexandria to attend there. *Id.* at PageID#1247.

At orientation, an employee of the university discussed the Alcohol and Drug Policy, and even privately assured Plaintiff that this policy was strictly enforced and that her daughter would be "safe" on campus.  Plaintiff claims that she justifiably relied on this representation in allowing her daughter to remain at Wilberforce following orientation. *Id.* at PageID#1248.  According to Plaintiff, in reality, Wilberforce officials were fully aware that its students frequently drank alcohol and used illicit drugs on campus, and took little action to stop this conduct. *Id.* at PageID##1249-50.  Plaintiff maintains that Wilberforce's failure to enforce its policy led to Alexandria's untimely death.

11

Austin-Hall's Third Amended Complaint asserts four counts against Wilberforce University: (1) negligence resulting in wrongful death; (2) survivorship; (3) willful, wanton and reckless misconduct; and (4) negligent misrepresentation, intentional misrepresentation and promissory estoppel. Wilberforce has moved for summary judgment on all claims.

### 1.    Wrongful Death and Survivorship

Counts I and II of the Third Amended Complaint seek damages for wrongful death and survivorship. A wrongful death claim is asserted on behalf of the decedent's beneficiaries, while a survivorship claim is brought on behalf of the decedent herself to compensate for her conscious pain and suffering between the time of the injury and her resulting death. *See Peters v. Columbus Steel Castings Co.*, 2007-Ohio-4787, at ¶¶ 10-11, 115 Ohio St.3d 134, 873 N.E.2d 1258; *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App. 3d 213, 227, 658 N.E.2d 1140, 1149 (2d Dist. 1995).

Both claims are based in negligence. "To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities*, 2004-Ohio-2629, ¶ 14, 102 Ohio St. 3d 230, 233, 809 N.E.2d 2, 6.

Here, Plaintiff alleges that Wilberforce was negligent in failing to enforce its Alcohol and Drug Policy. She maintains that university officials were aware that

students were using alcohol and illicit drugs on campus, and failed to exercise reasonable care in enforcing the policy. She further argues that Wilberforce was negligent in failing to prohibit intoxicated students from operating motor vehicles on campus.

In its Motion for Summary Judgment, Wilberforce argues that it owed no duty to Alexandria Austin and that, even if it did, Ariel Woodard's criminal conduct in driving the vehicle while intoxicated is a superseding cause that breaks any causal connection. Because the Court finds, as a matter of law, that Wilberforce owed no duty to Alexandria Austin to protect her from the actions of Ariel Woodard, it need not reach the issue of causation. *See Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989) (holding that the existence of duty is a question of law).

In *A.M. v. Miami University*, the Tenth District Court of Appeals noted that "there is no duty to prevent a third person from causing harm to another absent a special relationship between the parties or a duty imposed by statute." 2017-Ohio-8586, at ¶ 34, 88 N.E.3d 1013. The law is clearly established that colleges and universities do not stand *in loco parentis*, in the place of a parent. *Id.* at ¶ 40; *Booker v. Lehigh Univ.*, 800 F. Supp. 234, 240 (E.D. Pa. 1992). The Eighth Circuit has noted that "since the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students." *Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003) (citing *Bradshaw v. Rawlings*, 612 F.2d 135, 138-40 (3d Cir. 1979)).

13

In *Bradshaw*, the court held that, even if the college knew that its students would drink and drive, creating a known probability of harm to third persons, this created no duty of custodial care. College students are adults and must be treated as such. *Id.* at 139-42. *See also Beach v. Univ. of Utah*, 726 P.2d 413, 416 (Utah 1986) (holding that university had no special relationship with student that gave rise to an affirmative duty to supervise or protect her from injury while intoxicated).

Moreover, courts have repeatedly held that, in adopting a written policy restricting or prohibiting alcohol use on campus, a college or university does not assume the duty of protecting students who violate that policy. *See A.M.*, 2017-Ohio-8586, at ¶49 (holding that the fact that the university adopted a written policy prohibiting alcohol use on campus does not mean that it assumed "a duty of care under negligence law"); *Allen v. Rutgers*, 216 N.J. Super. 189, 192-93 (N.J. Super. Ct. App. Div. 1987) (affirming trial court's rejection of claim that, by adopting policies prohibiting the consumption of alcoholic beverages in the football stadium, the university assumed the duty of protecting person who violated that policy from injury); *Bradshaw,* 612 F.2d at 141 (rejecting argument that, by enacting regulation imposing sanctions on use of alcohol by students, university voluntarily assumed a "custodial relationship," subjecting the college to liability); *Rothbard v. Colgate Univ.*, 652 N.Y.S.2d 146, 148 (N.Y. App. Div. 1997) (holding that existence of student handbook expressly prohibiting conduct that resulted in plaintiff's injuries does not mean university "voluntarily assumed the duty to take

14

affirmative steps to supervise plaintiff and prevent him from engaging in the prohibited activity."); *Millard v. Osborne*, 611 A.2d 715, 720-21 (Pa. Super. Ct. 1992) (rejecting claim that alcohol policy gave rise to a special duty to control alcohol consumption on campus); *Booker*, 800 F. Supp. at 240 (same).

As the court explained in *Beach*, "[i]t would be unrealistic to impose upon an institution of higher education the additional role of custodian over its adult students and to charge it with responsibility for preventing students from illegally consuming alcohol and, should they do so, with responsibility for assuring their safety and the safety of others. . . . Fulfilling this charge would require the institution to babysit each student, a task beyond the resources of any school." 726 P.2d at 419.

Plaintiff argues that this case is factually distinguishable because the student handbook specifically states that the Alcohol and Drug Policy would be strictly enforced. In *Beach*, however, the court explained that, even if a university enacts rules restricting alcohol use, this "may permit discipline of students for infractions, but it certainly does not change the nature of their relationship." *Id.* at 420. The bottom line is that, regardless of the written policy, Wilberforce had no duty to protect Alexandria Austin from harm arising from anyone's violation of that policy.

Given that Wilberforce had no duty to protect Alexandria from harm caused by Ariel Woodard's violation of the Alcohol and Drug Policy, Plaintiff cannot prevail on her claims of wrongful death or survivorship. Accordingly, the Court SUSTAINS

Wilberforce's Motion for Summary Judgment on Counts I and II of the Third Amended Complaint.

### 2. Willful, Wanton and Reckless Misconduct

Count III of the Third Amended Complaint asserts a claim of "willful, wanton and reckless misconduct." Wilberforce argues that this is "a level of intent which negates certain defenses which might be available in an ordinary negligence action." It is not a stand-alone claim. *Griggy v. Cuyahoga Falls*, 9th Dist. No. 22753, 2006-Ohio-252, ¶ 8, 2006 WL 173134 (internal quotation omitted). Wilberforce further argues that, to the extent this claim is included to support Austin-Hall's request for punitive damages, again, Ohio does not recognize it as a stand-alone claim. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 649, 635 N.E.2d 331, 342 (Ohio 1994).

By failing to respond to these arguments in her memorandum in opposition, Plaintiff impliedly concedes that Count III is subject to dismissal. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion."). The Court therefore SUSTAINS Defendant's Motion for Summary Judgment on Count III of the Third Amended Complaint.

### 3. Negligent Misrepresentation, Intentional Misrepresentation and Promissory Estoppel

Count IV of the Third Amended Complaint broadly encompasses three claims of negligent misrepresentation, intentional misrepresentation and promissory

16

estoppel. Each claim has the same factual basis. Plaintiff generally alleges that she required her daughter to attend a university that not only prohibited the use of illicit drugs and alcohol, but also enforced that policy. She claims that Wilberforce made false representations, both in its handbook and on a campus tour she took with her daughter, that it had in place, and strictly enforced, a policy prohibiting the use of alcohol and illicit drugs. She further maintains that, during orientation, she was assured by a university representative that her daughter would be "safe" at Wilberforce.

According to Plaintiff, in actuality, Wilberforce had actual knowledge that its students frequently violated this policy. Students often gathered in the parking lot to drink alcohol and consume illicit drugs, while campus police watched from nearby. Plaintiff alleges that, but for the negligent or intentional misrepresentations and promises, on which she reasonably relied, she would not have permitted her daughter to attend Wilberforce, and her daughter would not have been killed in the car accident.

Having reviewed the relevant law as applied to the facts of this case, the Court, finding no genuine issue of material fact, concludes that Wilberforce is entitled to judgment as a matter of law on each of the claims asserted in Count IV.

### (i)     Negligent Misrepresentation

The Supreme Court of Ohio has described the tort of negligent misrepresentation as follows:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis added.) 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552(1).

*Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989).

*See also Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App.3d 270, 296, 714 N.E.2d 934, 951 (1998) (the doctrine of negligent misrepresentation "provides a tort vehicle for recovery of economic damages that arise from the breach of a contractual duty, where information is negligently supplied for the guidance of others in their business transactions, and a foreseeable recipient of such information justifiably relies upon it and suffers injury as a proximate cause of the negligent act." (internal quotation omitted)).

Wilberforce argues that Plaintiff's claim fails because: (1) there is no evidence that Wilberforce supplied false information; (2) there is no "special relationship" between Wilberforce and its prospective students or their families that would trigger liability; (3) Plaintiff's reliance on the alleged statements concerning the enforcement of the university's Alcohol and Drug Policy was not justified; and (4) Plaintiff cannot prove proximate cause between the alleged negligent misrepresentation and Alexandria's death.[4]

---

[4]   The Third Amended Complaint alleges that the misrepresentations resulted in Alexandria's death.  Doc. #38, PageID#375.  In her memorandum in opposition, however, Plaintiff instead argues only that the misrepresentations were the

18

The Court turns first to the question of whether Wilberforce University supplied false information to Plaintiff concerning its enforcement of the Alcohol and Drug Policy.  There is evidence to support a finding that Wilberforce University did strictly enforce that policy and that students were often disciplined for violations.  The university submitted dozens of pages of incident reports involving drug and alcohol use on campus.  Doc. #81-1, PageID##1102-61.  One student, Larry Harten-Roy, testified that if students were caught with drugs or alcohol on campus, there "was definitely going to be discipline coming for sure."  Doc. #72, PageID##615-16.

However, there is also ample evidence that university employees knew that students routinely violated the policy and simply chose to ignore the violations. Alana Wedderburn testified that university officials were aware of the drinking and smoking, but she knew of no one who was disciplined for violating the policy. Doc. #76, PageID##811-12.  Resident assistant Jasmine Griffin testified that she knew that the girls had a bottle of wine in the dorm room on the night of the accident, but she did not report it because she is "non-confrontational" when it comes to her friends.  Doc. #71, PageID##604-05.  Student Alazia Mixon testified that if resident assistants found drugs or alcohol in a dorm room, they typically did not report it.  Jacques Beasley, the front desk monitor in the dorm, typically just talked to the students about the violations, but did not report them.  Likewise,

---

"proximate cause of Plaintiff allowing Decedent to attend Wilberforce University." Doc. #84, PageID##1229.

campus police, who were aware that students drank alcohol and smoked marijuana in the parking lot, simply advised the students to stay in their cars so they would not get caught. Doc. #74, PageID##680-82, 741-45. Larry Harten-Roy testified that the students "got very good at [] partying in plain sight." The campus police "baby-s[a]t" the students "from a distance." Doc. #72, PageID##619, 621.

Jacque Beasley testified that he was aware that students drank alcohol and smoked marijuana in the dorm and in the parking lot, and he often had to call for an ambulance when a student passed out from drinking too much. Doc. #70, PageID##559-61. Security officer, Kevin Morris, Sr., testified that students often violated the policy but, unless they were being "unruly," he would often "just talk to them." He stated "[i]t wasn't our job to be a monitor on the students. Pretty much, it was just we were here to keep peace, keep order. . . You're not there to be a parent." Doc. #80, PageID##980-85.

Based on the evidence presented, a reasonable jury could find that the Wilberforce employee who conducted the campus tour supplied false information when he told Plaintiff that the university strictly enforced the Alcohol and Drug Policy. Nevertheless, this factual dispute is not a material one, because Plaintiff cannot prove other essential elements of her claim of negligent misrepresentation.

This "business tort [] is not meant to have extensive application. . . . It has no application to consumer transactions or typical business transactions." *Li-Conrad v. Curran*, 2016-Ohio-1496, ¶ 26, 50 N.E.3d 573. The great weight of authority indicates that a claim of negligent misrepresentation arises only in the

context of a special, fiduciary-type relationship between the parties, where the defendant "is in the business of supplying information." *Levy v. Seiber*, 2016-Ohio-68, at ¶ 37, 57 N.E.3d 331.  This is typically limited to certain professionals such as accountants and attorneys, from whom a specific individual is seeking advice in connection with a specific business transaction. *Id.  See also Ziegler v. Findlay Indus., Inc.*, 464 F. Supp.2d 733, 738 (N.D. Ohio 2006) (a "special relationship" is a "core requirement" of a negligent misrepresentation claim); *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*, 813 F. Supp.2d 871, 880 (S.D. Ohio 2011) (Graham, J.).[5]

Plaintiff has not alleged that any such "special relationship" exists between a college or university and its students or their parents.  Ohio courts have refused to recognize a fiduciary relationship between a university and its students. *See Valente v. Univ. of Dayton*, 438 F. App'x 381, 387 (6th Cir. 2011) (finding no Ohio cases recognizing such a fiduciary relationship); *Ohio Univ. Bd. of Tr. v. Smith*, 132 Ohio App.3d 211, 219-20, 724 N.E.2d 1155, 1160 (Ohio Ct. App. 1999) (noting lack of authority to support a finding that "there is a special or fiduciary relationship between an educational institution and a prospective student.").  Accordingly, the Court finds, as a matter of law, that Plaintiff's negligent misrepresentation claim against Wilberforce is simply not viable.

---

[5]  *But see Pacifica Loan Five, LLC v. Fifth Third Bank*, No. 1:09-cv-930, 2011 WL 13228111, at *10 (S.D. Ohio Apr. 14, 2011) (Barrett, J.) ("a special relationship is not a formal element of a negligent misrepresentation claim under Ohio law").

Moreover, based on the evidence presented, no reasonable jury could find that Plaintiff justifiably relied on the statements concerning strict enforcement of the Alcohol and Drug Policy or the statement that Alexandria would be "safe" there.  As discussed above, "a college is not an insurer of the safety of its students," *Freeman*, 349 F.3d at 587, and the existence of a written policy prohibiting the use of drugs and alcohol on campus does not give rise to a duty to protect students from others who violate that policy, *A.M.*, 2017-Ohio-8586, at ¶49.

There are additional reasons why no reasonable jury could find that Plaintiff's reliance on these statements was reasonable.  Alazia Mixon testified that, based on numerous Facebook posts, Plaintiff was aware that Alexandria and her friends were using alcohol on campus.  Doc. #74, PageID##718-19.  Likewise, Larry Harten-Roy testified that Plaintiff often conducted prayer sessions with the students via Facebook Messenger, and that she knew that they were drinking.  Doc. #72, PageID#630.  Plaintiff herself testified that she was aware that Alexandria and her friends sometimes left campus to party.  Doc. #69, PageID#525.  Plaintiff also testified that, when she visited campus for the "dawn dance" during Alexandria's sophomore year, she observed alcohol bottles and smelled marijuana.  *Id.* at PageID##526-27.  In light of the foregoing, no reasonable jury could find that, in allowing Alexandria to remain at Wilberforce, Plaintiff justifiably relied on the statements at issue.

22

For these reasons, the Court concludes that Wilberforce is entitled to summary judgment on Plaintiff's claim of negligent misrepresentation.[6]

### (ii)    Intentional Misrepresentation

The tort of intentional misrepresentation is similar to that of negligent misrepresentation, but requires intent to mislead. The elements are as follows:

> (a) a representation or, where there is a duty to disclose, concealment of a fact,
> (b) which is material to the transaction at hand,
> (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (d) with the intent of misleading another into relying upon it,
> (e) justifiable reliance upon the representation or concealment, and
> (f) a resulting injury proximately caused by the reliance.

*Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 429 N.E.2d 456, syl. ¶ 1.

Wilberforce University argues that, because Plaintiff cannot prevail on her claim of negligent misrepresentation, neither can she prevail on her claim of intentional misrepresentation. The Court agrees. Even if she could prove that the alleged statements concerning the university's strict enforcement of the Alcohol and Drug Policy, and the alleged assurances that Alexandria would be "safe" at Wilberforce, were materially false and made with the intent of misleading her into relying on them, the Court concludes, for the reasons discussed in the previous section of this Decision and Entry, that no reasonable jury could find that Plaintiff

---

[6]   The Court does not reach the issue of whether the alleged negligent misrepresentations were the proximate cause of any pecuniary loss suffered by Plaintiff.

justifiably relied on these statements. Wilberforce is, therefore, entitled to summary judgment on the claim of intentional misrepresentation.

### (iii) Promissory Estoppel

Finally, Plaintiff seeks recovery under a theory of promissory estoppel. In order to recover under this theory under Ohio law, Plaintiff must show: "(1) a clear and unambiguous promise; (2) reliance upon the promise by the promisee; (3) reliance by the promisee that is both reasonable and foreseeable; and (4) injury to the promisee as a result of the reliance." *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (quoting *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 374 (6th Cir. 2009)).

Plaintiff alleges that Wilberforce made a clear and unambiguous promise to strictly enforce its Alcohol and Drug Policy. However, there is no evidence that any such promise was made to Plaintiff or to anyone else. The university's representation that it strictly enforced this policy does not suffice to satisfy this element of the claim. As the court held in *McCarthy*, "[t]he plaintiff must establish that the defendant made a promise rather than a mere representation. . . . The word 'promise' connotes some sort of commitment on the part of the promissor." *Id.*

Moreover, even if Plaintiff could establish the first element of her claim, she cannot prove the third element. For reasons previously explained, no reasonable jury could find that she reasonably relied on this alleged promise. The Court

24

therefore sustains Wilberforce's motion for summary judgment on the promissory estoppel claim.

Each of the three claims set forth in Count IV of the Third Amended Complaint is dismissed with prejudice.


## IV.    Conclusion

The Court SUSTAINS *nunc pro tunc* Plaintiff's unopposed Motion for Leave to File Excess Pages, Doc. #82.  The Court SUSTAINS IN PART and OVERRULES IN PART Defendant Wilberforce University's Motion to Strike Affidavits, Doc. #86. Finding no genuine issues of material fact, the Court SUSTAINS Defendant Wilberforce University's Motion for Summary Judgment, Doc. #81, in its entirety, and DISMISSES all claims against it WITH PREJUDICE.

 Given counsels' representation that Plaintiff has reached tentative settlements with each of the other Defendants, the Court VACATES the November 2, 2020, trial date.  The Court will hold a conference call on October 21, 2020, at 4:00 p.m. to discuss the status of those pending settlements.


Date: October 7, 2020

_(tp - per Judge Rice authorization after his review)_

WALTER H. RICE
UNITED STATES DISTRICT JUDGE